NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2022 VT 39

No. 21-AP-247

| | |
|---|---|
| In re Benoit Conversion Application (Gregory Benoit & Deborah Benoit, Appellants) | Supreme Court |
| | On Appeal from Superior Court, Environmental Division |
| | February Term, 2022 |

Thomas S. Durkin, J.

Michael S. Gawne of Cahill, Gawne, Miller & Manahan, P.C., St. Albans, for Appellants.

Michael J. Leddy of McNeil, Leddy & Sheahan, P.C., Burlington, for Appellee City of St. Albans.

PRESENT: Reiber, C.J., Eaton, Carroll and Cohen, JJ., and Johnson, J. (Ret.), Specially Assigned

¶ 1.    **COHEN, J.**  The Benoits seek to set aside a 2008 judgment under Vermont Rule of Civil Procedure 60(b)(5). They contend that the decision was effectively overruled by a later case involving different parties. The Environmental Division denied their request and we affirm its decision.

¶ 2.    This case has a lengthy history, which we recounted in our 2008 decision. See City of St. Albans v. Hayford, 2008 VT 36, 183 Vt. 596, 949 A.2d 1058 (mem.). Essentially restated, the Benoits own real property in the City of St. Albans, Vermont, which they purchased from the Hayfords in 2003. The property has a main building with multiple rental units and a separate

building in the rear of the property. In 1987, the Hayfords converted the rear building to an additional residential unit without first obtaining a zoning permit or site-plan approval, as required by the applicable zoning regulations.

¶ 3.    The City adopted new zoning regulations in 1998, which made the property more nonconforming in several respects. Id. ¶ 5. The zoning board of adjustment determined in 1998 that the Hayfords needed variances to have six residential dwelling units on the property and it denied their request for variances. The zoning administrator also denied the Hayfords' request for a certificate of occupancy, finding that the property did not meet the 1998 zoning regulations. Id. Both the denial of the certificate of occupancy and a subsequent denial of the Hayfords' request for variances were not appealed and became final.

¶ 4.    In 2001, the zoning administrator issued a notice of violation (NOV), alleging that only four of the six residential units on the property had been approved. The Hayfords appealed to the Development Review Board and again applied for variances. The Board upheld the NOV and denied the variance requests based on the unappealed 1998 decision referenced above. The Hayfords then appealed to the environmental court. In a 2003 decision, the court upheld the variance denial and upheld the NOV with respect to the sixth residential unit in the rear building. Id. ¶ 6. The Hayfords, and later the Benoits, nonetheless "continued to rent out the sixth residence in the rear building despite the notice of violation." Id. ¶ 7.

¶ 5.    In 2004, the City brought an enforcement action against the Benoits and the Hayfords under 24 V.S.A. § 4470(b). The City had also filed a complaint in June 2003, which the parties agreed to dismiss as redundant with the understanding that the City's request for monetary penalties and injunctive relief under 24 V.S.A. §§ 4451 and 4452 would continue to be litigated in the existing enforcement case. The Benoits and Hayfords argued that the actions were barred by the fifteen-year statute of limitations in 24 V.S.A. § 4454(a).

2

¶ 6. The environmental court concluded that "although the Hayfords' failure to obtain a permit and site-plan approval in 1987 occurred more than fifteen years before the instant enforcement action, a new and independent violation occurred in 1998 when the City adopted its new zoning regulations." Hayford, 2008 VT 36, ¶ 9. It ordered the Hayfords and the Benoits to stop using the rear building as a residential unit and imposed fines.

¶ 7. The Benoits and Hayfords then appealed to this Court. They argued that the sixth residential unit was a grandfathered nonconforming use following the adoption of the 1998 zoning regulations and that the enforcement action should be barred by the fifteen-year statute of limitations in 24 V.S.A. § 4454(a). We rejected this argument. We found that the Hayfords' conversion of the rear unit in 1987 "did not conform to all applicable laws at the time it commenced," and therefore, it was not "immune from a later notice of violation after the 1998 [zoning] regulations made it nonconforming in several additional respects." Hayford, 2008 VT 36, ¶ 11. We noted that the environmental court had "also ruled, alternatively, that even without a fresh violation in 1998, the older violation was a continuing-use violation that could be noticed at any time, and further, that the fifteen-year statute of limitations did not apply to actions brought under 24 V.S.A. § 4470(b) to enforce decisions of the developmental review board, the zoning board of adjustment, or the planning commission." Id. ¶ 9 n.*. We found it unnecessary to address these rationales because we agreed with the trial court's ruling as to the 1998 violation. Id.

¶ 8. Eleven years later, in a case involving different parties, this Court directly considered a challenge to the "longstanding Environmental Division interpretation of [24 V.S.A.] § 4454(a)" that "use violations," as compared to "structural violations," were considered "ongoing" violations and thus, not barred by the fifteen-year statute of limitations in 24 V.S.A. § 4544(a). In re 204 N. Ave. NOV, 2019 VT 52, ¶ 3, 210 Vt. 572, 218 A.3d 24. We held that the statute of limitations in § 4454(a) "applies to all municipal land-use violations" and it did not allow a municipality "to pursue use violations as long as they continue." Id. ¶ 7.

3

¶ 9. In late December 2020, the Benoits and the City of St. Albans jointly moved to set aside the Hayford decision. They did so to avoid further litigation on the question of whether, as the Benoits argued, Hayford should be set aside in light of 204 North Avenue. They asked the court to modify Hayford to allow the Benoits to use the fifth apartment in the main building as a residential dwelling unit and also use the rear building as a residential dwelling unit, resulting in a total of six residential dwelling units on the property. They submitted a site plan, which they agreed should be the approved and enforceable exterior site plan for the property.

¶ 10. The Environmental Division denied the parties' request, finding no grounds to set aside the decision under Rule 60(b)(5). That rule provides relief from a judgment where "the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application." V.R.C.P. 60(b)(5). The court concluded that while 204 North Avenue represented a significant change in the interpretation of 24 V.S.A. § 4454, Hayford was decided and affirmed on grounds independent of the holding in 204 North Avenue. That case therefore did not "effectively overrule" Hayford and granting the parties' request "would run counter to the interests served by Rule 60(b)(5) in providing relief where there exists 'a clear showing of grievous wrong.' " (Quoting United States v. Swift & Co., 286 U.S. 106, 119 (1932).)

¶ 11. The Benoits moved for reconsideration. They argued that Hayford and 204 North Avenue involved similar facts and that they were entitled to the same result as in 204 North Avenue. The court denied the motion, finding no basis to amend or reverse its earlier ruling. It noted that the Benoits were free to seek new review and approval of their future use of the property or enter into an agreement regarding the future use of the property that did not require the court's approval. This appeal followed.

¶ 12. On appeal, the Benoits argue that they are entitled to relief under Rule 60(b)(5) because 204 North Avenue "effectively overruled" Hayford. They reason as follows. In 204 North

4

Avenue, this Court reached a conclusion contrary to City of Burlington v. Richardson, No. 188-10-03 Vtec, 2006 WL 4088224 (Vt. Env't Ct. June 27, 2006), https://www.vermontjudiciary.org/sites/default/files/documents/03-188z%20BurlRichardson%20sjo.pdf [https://perma.cc/5PC2-KLPS], because the Court rejected the notion that " 'use violations are analyzed as continuing or recurring violations.' " 2019 VT 52, ¶ 3 (quoting Richardson, 2006 WL 4088224). They note that the Hayford decision (at the Environmental Court level) relied on Richardson in reaching its conclusion. Therefore, they reason, Hayford has been effectively overruled. The Benoits contend that they purchased their property believing that the statute of limitations had run with respect to the notice of violation and that, to promote judicial economy and increase the security of property transactions, the holding of 204 North Avenue should be retroactively applied to Hayford and Hayford should be set aside.[*]

¶ 13.    The trial court has discretion in ruling on a Rule 60(b) motion and its decision "is not subject to appellate review unless it clearly and affirmatively appears from the record that such discretion was withheld or otherwise abused." Riehle v. Tudhope, 171 Vt. 626, 628, 765 A.2d 885, 887 (2000) (quotation omitted)). The Benoits fail to show an abuse of discretion here.

¶ 14.    First, we reject the argument that 204 North Avenue "effectively overruled" Hayford. As set forth above, our decision in Hayford did not rest on a "continuing use" theory. We expressly declined to reach that alternate rationale offered by the trial court and affirmed the trial court's decision on a separate and independent ground, namely, that "the 1998 [zoning] regulations made [the property] nonconforming in several additional respects." Hayford, 2008 VT 36, ¶ 11.

---

[*]    The Benoits also assert that, with respect to the merits of Hayford, the Court should conclude—contrary to its 2008 decision—that the lot qualified as a grandfathered nonconforming lot at the time the zoning laws were amended in 1998 and that the enforcement action was barred by the statute of limitations. There is no basis to revisit the merits of our 2008 decision in this appeal.

¶ 15. Even assuming arguendo that Hayford was "effectively overruled," that would not entitle the Benoits to relief under Rule 60(b)(5). That rule provides relief from a judgment where "the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application." V.R.C.P. 60(b)(5). It "does not apply merely because a case relied on as precedent by the court in rendering the present judgment has since been reversed." 11 C. Wright & A. Miller, Federal Practice and Procedure Civil § 2863 (3d ed. 2022); see also Reporter's Notes, V.R.C.P. 60 (indicating that V.R.C.P. 60 is "substantially identical to Federal Rule 60"); Reporter's Notes, V.R.C.P.1 ("Federal cases interpreting the Federal Rules are an authoritative source for the interpretation of identical provisions of the Vermont Rules.").

¶ 16. This approach promotes the finality of judgments, which is "fundamental to our judicial system." Comfort v. Lynn Sch. Comm., 560 F.3d 22, 26 (1st Cir. 2009); see also Miller v. Miller, 2008 VT 86, ¶ 27, 184 Vt. 464, 965 A.2d 524 (recognizing that exceptions to finality rule set forth in Rule 60(b) should be "applied guardedly and only in extraordinary circumstances" given "the important interest in finality of judgments" (quotations and citation omitted)). Litigants must "be able to depend on the certainty and stability" of judgments in their cases. Comfort, 560 F.3d at 26. There is also an "institutional value" at stake "that transcends the litigants' parochial interests," id. (alterations omitted) (quotation omitted), and "[t]his institutional interest dictates that the principle of finality should hold sway even when newly emergent decisions materially alter the legal landscape," id. Thus, "in all but the most exceptional circumstances, the great desirability of preserving the principle of finality of judgments preponderates heavily over any claim of injustice." Id. (quotation omitted). For that reason, courts recognize that "a case cannot be re-opened simply because some new development makes it appear, in retrospect, that a judgment on the merits long since settled was brought about by judicial error." Id. (citing Hoult

6

v. Hoult, 57 F.3d 1, 5 (1st Cir. 1995) (explaining that incorrectly decided point of law, without more, cannot provide ground for relief from final judgment) (citing cases).

¶ 17.    Mindful of these principles, the language at issue here in Rule 60(b)(5) "is limited to cases in which the present judgment is based on the prior judgment in the sense of claim or issue preclusion."  11 Wright & Miller, supra, § 2863 (explaining that this language in Rule 60(b)(5), while "obviously . . . sound," "has had very little application").  In other words, there must be "a direct connection between the prior judgment and the supposedly reversing judgment."  Comfort, 560 F.3d at 26; see also Lubben v. Selective Serv. Sys. Local Bd. No. 27, 453 F.2d 645, 650 (1st Cir. 1972) ("For a decision to be 'based on' a prior judgment within the meaning of Rule 60(b)(5), the prior judgment must be a necessary element of the decision, giving rise, for example, to the cause of action or a successful defense."  "The mere emergence of controlling precedent in some other case that shows the incorrectness of the prior judgment" does not suffice.  Comfort, 560 F.3d at 27; see also Lubben, 453 F.2d at 650 ("It is not sufficient that the prior judgment provides only precedent for the decision.").  Thus, in Comfort, the court rejected the argument that a decision had been "effectively overruled" by a subsequent case where the later case, "though squarely on point, was rendered in a completely separate case."  560 F.3d at 27.  In those circumstances, "[n]o direct connection exists."  Id.

¶ 18.    The type of case where a "direct connection" exists is illustrated by Michigan Surety Co. v. Service Machinery Corp., 277 F.2d 531 (5th Cir. 1960).  In that case, the plaintiffs initially sued a defendant-corporation and the proceedings were commenced by attaching two dredges belonging to the defendant.  The Michigan Surety Co. became surety on the attachment bond and was obligated to pay all costs and damages sustained by the defendant-corporation if the attachment was wrongfully obtained.  A state trial court dissolved the attachment.  The defendant-corporation then sued the surety company in federal court on the attachment bond, seeking

7

damages, and the federal court awarded judgment to the defendant-corporation. The state appeals court then reinstated the injunction, reversing the state trial court's decision to dissolve it.

¶ 19. Under those circumstances, the federal court held that the surety company was entitled to relief from the judgment award in the defendant-corporation's favor under Rule 60(b)(5). It explained that the defendant-corporation's "claim, and the judgment upon it, were dependent upon and hence were based upon the state court judgment that the attachment was improperly sued out." 227 F.2d at 533. Thus, if the federal court judgment were allowed to stand, it would allow for a recovery on a claim that was, or but for the federal court judgment, "would have been extinguished," when the state court judgment became final and the prevention of "such a manifest miscarriage of justice was one of the purposes of the adoption of the quoted rule." Id.

¶ 20. The final decision sought to be set aside here—the 2008 Hayford decision—was not based on the 204 North Avenue decision and there is no direct connection between the two cases. Even assuming arguendo that Hayford rested on a "continuing use" theory, the rejection of that theory in a later, unrelated case would not entitle the Benoits to the relief they seek. The Richardson case, at best, "provide[d] only precedent" for the Environmental Court decision, which does not suffice. Lubben, 453 F.2d at 650. "In the absence of . . . a direct connection [between the two cases], 'a change in applicable law does not provide sufficient basis for relief.' " Comfort, 560 F.3d at 27 (quoting Lubben, 453 F.2d at 650).

¶ 21. The Benoits do not squarely argue that they are entitled to relief under the third prong of Rule 60(b)(5), which states that relief from judgment may be appropriate "where it is no longer equitable that the judgment should have prospective application." This equitable provision, by its terms, "applies only to judgments having prospective application," such as injunctions and consent decrees, and "[e]ven then, . . . the provision's application [has been limited] to injunctions and consent decrees that involve 'long-term supervision of changing conduct or conditions.' " Comfort, 560 F.3d at 28 (quoting Paul Revere Variable Annuity Ins. Co. v. Zang, 248 F.3d 1, 7

8

(1st Cir. 2001) (explaining that this provision "is particularly concerned" with matters like "institutional reform litigation, where, because the decree involves the long-term supervision of changing conduct or conditions, its prospective requirements may be rendered inappropriate by unforeseen changes in circumstance subsequent to the entry of the order").

¶ 22.    Even if the Benoits did raise this argument on appeal, we would reject it.  The trial court plainly found that there was no clear showing of a grievous wrong here that would warrant setting aside the 2008 judgment.  In other words, there was no equitable basis for doing so, particularly as the continuing-use theory was not reached in <u>Hayford</u>.  There is no basis to disturb this discretionary determination on appeal.  The court did not err in denying the Benoits' request for relief from judgment.

<u>Affirmed</u>.

FOR THE COURT:

_____
Associate Justice